**Mary Louise MAXWELL**

v.

**Robert D. KIGHT.**

**No. 1:96–MC–29.**

United States District Court,
E.D. Texas,
Beaumont Division.

Dec. 31, 1996.

Mary Louise Maxwell, pro se.

### MEMORANDUM ORDER ADOPTING THE MAGISTRATE JUDGE'S RE-PORT AND RECOMMENDATION

COBB, District Judge.

The court heretofore ordered that this matter be referred to the Honorable Earl S. Hines, United States Magistrate Judge, at Beaumont, Texas, for consideration pursuant to applicable laws and orders of this court. The court has received and considered the Report of the United States Magistrate Judge pursuant to such order, along with the record, pleadings and all available evidence. No objections to the Report of the United States Magistrate Judge were filed by the parties.

Accordingly, the findings of fact and conclusions of law of the magistrate judge are correct and the report of the magistrate judge is **ADOPTED.** It is therefore

**ORDERED** and **ADJUDGED** that movant's motion to proceed *in forma pauperis* is **DENIED.** It is further

**ORDERED** and **ADJUDGED** that movant's motion for appointment of counsel is **DENIED** for lack of subject-matter jurisdiction. It is further

**ORDERED** and **ADJUDGED** that movant is **GRANTED** a reasonable period of time, up to and including January 31, 1997, within which to file her Title VII complaint on a *pro se* basis or through privately retained counsel, if she wishes to proceed.

Failure of movant to proceed within such time will result in the automatic termination

of this proceeding without the necessity of further order of the Court.

### REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE RE: MOVANT'S MOTIONS TO PROCEED IN FORMA PAUPERIS AND FOR APPOINTMENT OF COUNSEL

HINES, United States Magistrate Judge.

Pending are movant Mary Louise Maxwell's motions to proceed *in forma pauperis* and for appointment of counsel in a proposed Title VII (employment discrimination) suit.[1]

The motions were referred to the undersigned United States Magistrate Judge for hearing and issuance of a report and recommendation as to whether the motions should be granted. A hearing was convened on September 30, 1996 in Beaumont, Texas, at the Jack Brooks Federal Building. The movant appeared to present her motions and respond to questions. Prior to the hearing, the court ordered movant to produce for the court's inspection a copy of her Equal Employment Opportunity Commission ("EEOC") investigative file. These records were timely received. Upon review of these records and consideration of the testimony given at the hearing, the court ordered movant to replead as to certain specific facts in the form of answers to questions submitted to her by the court.

This report is based upon movant's complete court file, testimony adduced at the hearing, and her repleading.

### I. Background

Movant was employed by the International Union of Operating Engineers Local 450 in Nederland, Texas. Movant was a secretary for Local 450 from 1983 to March 31, 1995, when her employment was terminated. At the time she was fired, Maxwell was one of six individuals employed by Local 450. During her employment, her wages and benefits, as with the other Local employees, were paid by Local 450. Her job duties were assigned by Local 450's business manager and president Robert D. Kight, and he established the terms and conditions of her employment and had sole authority to hire and fire her.

Movant complains that since June 1994 she was subjected to different terms and conditions of employment by being denied overtime compensation, deprived of retirement fund contributions, and raises. She also alleges that she was subjected to a hostile work environment and sexually harassed by Kight. Movant asserts that the disparate treatment she received and the eventual termination of her employment resulted from her refusal of Kight's sexual advances.

Based on this treatment, movant tendered for filing a pro se complaint on August 12, 1996 alleging violations of Title VII of the Civil Rights Act of 1964, as amended, and of the Age Discrimination in Employment Act of 1967, as amended. She also submitted an application to proceed *in forma pauperis* and a motion for appointed counsel.

### II. Motion to Proceed In Forma Pauperis

An individual need not be absolutely destitute to enjoy the benefit of proceeding *in forma pauperis*. *Adkins v. E.I. DuPont de Nemours, Inc.*, 335 U.S. 331, 339, 69 S.Ct. 85, 89, 93 L.Ed. 43 (1948). An affidavit to proceed *in form pauperis* is sufficient if it states that one cannot because of his poverty afford to pay for the costs of litigation and still provide for himself. *Id.*

Movant is not destitute, although she is currently unemployed. Within the past year, she has received the following income: $2200 from self-employment; $1100 in interest; $13,695 in pension benefits; and $8,040 in social security benefits. Pl.'s Aff. in Support of Mot. at 1–2. She also has $28,000 in cash and deposited funds. *Id.* at 2. Her real and personal property include a house she valued at $75,000 and a car valued at $1500. *Id.* Further, she has no dependents. *Id.*

Movant stated at the September 30, 1996 hearing that she could in fact afford to pay the requisite filing fee.

Based on this financial profile, and movant's agreement that she is able to pay the

---

1. Title VII provides that "[u]pon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the action without the payment of fees, costs, or security." 42 U.S.C. § 2000e–5(f)(1).

filing fee, movant's motion to proceed *in forma pauperis* should be denied.

### III. Motion for Appointment of Counsel

■ "Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant...." 42 U.S.C. § 2000e–5(f)(1). Although this section grants the right to request an attorney, it does not confer a right to actually have one appointed. The decision whether to appoint an attorney is one within the broad discretion of the trial judge given the particular facts of the case.[2] *Gonzalez v. Carlin,* 907 F.2d 573, 579 (5th Cir.1990); *Young v. K–Mart Corp.,* 911 F.Supp. 210, 211 (E.D.Va.1996). There is, however, the threshold question of jurisdiction.

### A. Legal Standards

#### 1. Subject-Matter Jurisdiction (Generally)

■ Jurisdiction over the subject matter of a suit is critical in the federal court system because all federal courts are courts of limited jurisdiction. *See* CHARLES A. WRIGHT, LAW OF FEDERAL COURT 17–18 (3d ed.1976). As such, this court is under an independent obligation to examine the basis of its jurisdiction over the subject matter, sua sponte if necessary, in order to avoid an unconstitutional invasion of the powers reserved to the states or another branch of the federal government. *See* 13 CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 3522 (2d ed. Supp.1996). A less stringent examination is afforded pro se pleadings, *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972), but simple reference to federal law does not create subject-matter jurisdiction. *Avitts v. Amoco Prod. Co.,* 53 F.3d 690, 694 (5th Cir.1995). Subject-matter jurisdiction is created only by pleading a cause of action that is within the court's original jurisdiction. *Id.*

The complainant has the burden of demonstrating subject-matter jurisdiction. *See, e.g., Epps v. Bexar–Medina–Atascosa Counties Water Improvement Dist. No. 1,* 665 F.2d 594, 595 (5th Cir.1982) (party invoking federal subject-matter jurisdiction has burden of pleading and proving it). In the Fifth Circuit, subject-matter jurisdiction determinations may be made using any one of the following bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Barrett Computer Servs., Inc. v. PDA, Inc.,* 884 F.2d 214, 220 (5th Cir.1989) (citing *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981)). A court shall dismiss any action over which it lacks jurisdiction. FED. R. CIV. P. 12(h)(3).

#### 2. Jurisdiction Under Age Discrimination in Employment Act ("ADEA")

■ For federal subject matter jurisdiction to exist under the ADEA, defendant must meet the Act's definition of "employer." 29 U.S.C. §§ 621–634; *Rogers v. Sugar Tree Prods., Inc.,* 7 F.3d 577 (7th Cir.1993). The ADEA defines "employer" as follows:

> [A] person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year ... The term also means (1) any agent of such a person.

29 U.S.C. § 630(b). A plaintiff who sues a union in its capacity as an employer under the ADEA must demonstrate that the union meets the statutory definition of "employer." *Herman v. United Bhd. of Carpenters & Joiners of America, Local Union No. 971,* 60 F.3d 1375, 1384–85 (9th Cir.1995). Under

---

**2.** The following three factors are generally balanced by courts in determining whether to appoint an attorney: the merits of the claim, the plaintiff's own efforts to secure counsel, and the plaintiff's financial ability to retain private counsel. *Gonzalez,* 907 F.2d at 580; *Marshall v. University of Chicago Hosp.,* No. 90C2896, 1990 WL 77541, at *1 (N.D.Ill. May 29, 1990). Several courts also consider a plaintiff's ability under

the circumstances of the case to present the case without the assistance of an attorney, *Poindexter v. FBI,* 737 F.2d 1173, 1189 (D.C.Cir.1984); *Young,* 911 F.Supp. at 211, and the Fifth Circuit has implicitly recognized the correctness of such a further inquiry, *Salmon v. Corpus Christi Indep. Sch. Dist.,* 911 F.2d 1165, 1166–67 (5th Cir.1990).

Title VII a union can be both an "employer" and a "labor organization." As a labor organization, the union is covered under the Act and may be liable in respect to its dealings with employers or its membership, 42 U.S.C. § 2000e–2(c), if it meets the definition of a labor organization. *See* 42 U.S.C. §§ 2000e(d), (e). But where a plaintiff attempts to hold the union liable in its employer capacity, it must fall under that definition, *see* 42 U.S.C. § 2000e(b), just like as any other employer.

### 3. Jurisdiction Under Title VII of the Civil Rights Act of 1964 ("Title VII")

■ Section 703(a) of Title VII makes it an unlawful employment practice for an employer to engage in employment discrimination based on race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a). The term "employer" is defined as

> a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person.

42 U.S.C. § 2000e(b). When a plaintiff brings a Title VII action against a union in its capacity as an employer, the plaintiff must demonstrate that the union meets the Title VII definition of "employer." *Yerdon v. Henry*, 91 F.3d 370, 377 (2d Cir.1996); *Chavero v. Local 241, Division of the Amalgamated Transit Union*, 787 F.2d 1154, 1155 n. 1 (7th Cir.1986).

■ A labor union with fewer than 15 employees cannot be sued for discrimination as an employer under Title VII. *Yerdon*, 91 F.3d at 377; *see also Greenlees v. Eidenmuller Enters., Inc.*, 32 F.3d 197, 198–99 (5th Cir.1994) (stating that an employment agency can be classified as either an employer or an employment agency, but, when it is sued in its capacity as an employer, plaintiff must demonstrate that it meets the Title VII definition of employer).

### B. Analysis

■ Although Kight is the named defendant, an individual supervisor cannot be held liable under either the ADEA or Title VII. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir.1996) (holding that the ADEA provides no basis for individual liability for supervisory employees); *Grant v. Lone Star Co.*, 21 F.3d 649, 651–53 (5th Cir.), *cert. denied*, 513 U.S. 1015, 115 S.Ct. 574, 130 L.Ed.2d 491 (1994) (holding that an individual supervisor who does not otherwise qualify as an employer cannot be held liable for a violation of Title VII). Therefore, the court treats the suit as if it were filed against Local 450 as movant's employer.[3]

■ Movant concedes that Local 450 employed less than 15 individuals during the current and preceding calendar year, which would deprive this court of jurisdiction. When informed by the court of the minimum employee requirement at the September 30, 1996 hearing, movant asserted that the EEOC informed her that Local 450 is simply one unit of the larger International Union of Operating Engineers, and thus, the employees of all of the member locals and the international should be aggregated for purposes of the statutory requirements.[4] The undersigned construed this statement as movant's contention that subject matter jurisdiction exists on the basis articulated by the EEOC.

The Ninth Circuit has addressed this precise argument in both the Title VII and ADEA contexts. *See Herman*, 60 F.3d at 1375 (ADEA); *Childs v. Local 18, Int'l Bhd.*

---

3. Determining whether a defendant is an "employer" under Title VII or the ADEA involves a two-step process. First, the defendant must fall within the statutory definition. Second, there must be an employment relationship between the plaintiff and the defendant. *See generally Fields v. Hallsville Indep. Sch. Dist.*, 906 F.2d 1017, 1019 (5th Cir.1990), *cert. denied*, 498 U.S. 1026, 111 S.Ct. 676, 112 L.Ed.2d 668 (1991).

4. An international and local union's actual relationship may render the two a single entity or render the local an agent of the international for jurisdictional purposes. Further, that relationship may render the international union jointly liable for acts of the local union. Whether the law imposes responsibility for discriminatory acts of the local to the international depends on the entities' interrelationship with respect to the act from which liability stems. *See Sinyard v. Foote & Davies Div. of McCall Corp.*, 577 F.2d 943, 945 (5th Cir.1978); *see also Glus v. G.C. Murphy Co.*, 629 F.2d 248 (3d Cir.1980), *vacated*, 451 U.S. 935, 101 S.Ct. 2013, 68 L.Ed.2d 321 (1981), *and on remand aff'd. in relevant part*, 654 F.2d 944 (3d Cir.1981).

*of Elec. Workers,* 719 F.2d 1379 (9th Cir. 1983) (Title VII). That circuit adopted a four-part test to determine whether two employing entities constitute a single employer that entails the following factors: (1) interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership or financial control. *Herman,* 60 F.3d at 1383; *Childs,* 719 F.2d at 1382. The courts of that circuit have consistently rejected arguments that international unions and their subordinate local unions are a single employer. *See Childs,* 719 F.2d at 1379. The Fifth Circuit has adopted the same four-part test to determine whether separate entities should be treated as a single employer. *Trevino v. Celanese Corp.,* 701 F.2d 397, 403–04 (5th Cir.1983) (Title VII suit against related company of employer); *see, e.g., Garcia v. Elf Atochem North America,* 28 F.3d 446, 450 (5th Cir. 1994) (Title VII suit against parent company of employer). Courts applying this four-part standard in Title VII and related cases have focused on the third factor: centralized control of labor relations. *Id.* at 404. Therefore, the critical question to be answered is: Which entity made the final decisions regarding employment matters related to the complainant? *·Id.*

Movant was given the opportunity to support her jurisdictional argument by repleading specific facts in the form of answers to questions submitted to her by the court.[5] These questions were designed to supply the necessary information to answer the four-part standard. Movant answered that Kight was responsible for the hiring and firing of employees and for the making of other personnel decisions for Local 450. Pl.'s Resp., filed Doc. No. 9, at 1. She responded that Kight both hired and ordered her fired from the Local, decisions that did not require approval from any other individual or entity. *Id.* Further, she noted that Kight had no affiliation with the International Union of Operating Engineers.[6] *Id.* In addition, according to movant, the members of Local 450 elect their own officers. *Id.* at 2. The Local has its own treasury, and to movant's knowledge these funds are not commingled with those of any other corporate entity. *Id.* Further, movant notes that Kight controls most of the expenditures from the treasury.[7] *Id.* Finally, movant notes that, to her knowledge, Local 450 does not share office facilities,

---

5. This court must construe pleadings of a pro se plaintiff liberally, *Haines,* 404 U.S. at 520, 92 S.Ct. at 595, and closely scrutinizing complaints filed in forma pauperis to determine whether any defendants or claims should be dismissed. *See Green v. McKaskle,* 788 F.2d 1116, 1119–20 (5th Cir.1986). The determination as to whether jurisdiction exists is similar, in these respects, to the scrutiny applied to complaints filed in forma pauperis to determine whether any defendants or claims should be dismissed as frivolous.

When it is not apparent from the face of a complaint whether a pro se plaintiff's contentions are frivolous, this court attempts to develop the known facts behind the complaint until satisfied that either plaintiff's claims have merit or they do not. *See Cay v. Estelle,* 789 F.2d 318, 323 (5th Cir.1986). This court uses a number of methods to develop facts behind a complaint. The court may send plaintiffs a questionnaire that requires them to provide additional details behind the facts and his claims. *See id.; Watson v. Ault,* 525 F.2d 886, 893 (5th Cir.1976). Alternatively, a magistrate judge may hold an evidentiary hearing to determine whether the claims are frivolous. *Spears v. McCotter,* 766 F.2d 179, 181–82 (5th Cir.1985). In addition, the court may order agency officials to develop an administrative record that assists the court in determining whether the lawsuit is frivolous. *See Cay,* 789 F.2d at 323 n. 4 (citing *Martinez v. Aaron,*

570 F.2d 317, 319 (10th Cir.1978)). Finally, in appropriate situations, such as when plaintiffs are unable to identify those who have allegedly wronged them, the court may allow limited discovery. *See Murphy v. Kellar,* 950 F.2d 290, 293 (5th Cir.1992).

In the present action, the court provided movant the opportunity to develop the facts of her case through both a hearing and questionnaire. The facts developed from these sources were considered in preparing this Report.

6. She does assert that Kight is required to meet with the International to remain updated on union rules. Movant's Resp., filed as Doc. No. 9, at 1. Such policies or regulations on the part of the International do not establish that the International exerts control over Local 450. Rather, the proper analysis focuses on the reality of the control, not necessarily the number and structure of the International via its constitution or regulations. *See Shepherdson v. Local Union No. 401 of Int'l Ass'n of Bridge Structural & Ornamental Ironworkers,* 823 F.Supp. 1245, 1256 (E.D.Pa. 1993).

7. Although movant does not make the argument, the court considered whether the board members are employees of Local 450. *See EEOC v. Johnson & Higgins, Inc.,* 91 F.3d 1529, 1538–39 (2d

equipment or services with any other corporate entity. *Id.*

It is apparent that Local 450 made the final decision regarding movant's employment. Further, movant has failed to allege any facts sufficient to establish a single or joint employer relationship between the local and international unions. Based on the facts provided by movant, the court determines that there is no interrelation of operations; no common management; no centralized control of labor relations; and no common ownership or financial control between Local 450 and the International Union of Operating Engineers. Therefore, the court concludes that Local 450 and the international union are not a single entity under the single employer doctrine.

## C. Conclusion

Local 450 is being sued in its capacity as an employer. It does not have the number of employees required to qualify under the statutory definitions of "employer." Moreover, the operations of the local are not sufficiently intertwined with those of the international union to warrant aggregating the number of employees of these entities. Therefore, neither the ADEA nor Title VII can serve as the basis for subject-matter jurisdiction over this complaint.

Accordingly, movant's motion for appointment of counsel should be denied because this cause should be dismissed for want of jurisdiction if it is filed in a federal court.

## IV. Recommendation

Movant's motion to proceed *in forma pauperis* should be denied. Movant's motion for appointment of counsel also should be denied because the court lacks subject-matter jurisdiction. Further, if movant chooses to proceed by filing her complaint pro se, the court should, sua sponte, dismiss the causes for lack of jurisdiction.

Cir.1996) (holding that directors or board members can be considered employees depending upon their responsibilities within the business); *see also Zimmerman v. North American Signal Co.,* 704 F.2d 347 (7th Cir.1983) (holding that unpaid, inactive officers should not be counted to determine whether an employer employs a sufficient number of employees to invoke coverage of the ADEA). Movant notes that there is an executive board that enjoys some decision-making

## V. Objections

Objections must be (1) specific, (2) in writing, and (3) served and filed within ten days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(b) and 72(b).

A party's failure to object bars that party from (1) entitlement to *de novo* review by a district judge of proposed findings and recommendations, *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir.1988), and (2) appellate review, except on grounds of plain error, of unobjected-to factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir.1996) (en banc).

Nov. 26, 1996.

power regarding the Local's funds; however, she answers that the board merely supports Kight's decisions and that it does not meet as often as it should. Movant's Resp., filed as Doc. No. 9, at 2. There is no evidence that the board members have assumed duties that make them employees for purposes of the anti-discrimination laws. Therefore, the board members should not be counted as employees of Local 450 for purposes of Title VII or the ADEA.